UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRERNA SINGH,

Plaintiff,

-v-

MEETUP LLC and DAVID SIEGEL,

Defendants.

23-CV-9502 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Prerna Singh brings this action against Defendants Meetup LLC ("Meetup") and

David Siegel, asserting claims under Title VII, 42 U.S.C. §§ 2000e, *et seq.*, the Family and

Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601, *et seq.*, the New York State Human

Rights Law (NYSHRL), N.Y. Executive Law §§ 290, *et seq.*, and the New York City Human

Rights Law (NYCHRL), N.Y.C. Admin. Code §§ 8-101, *et seq*.  Before the Court is Defendants'

motion to compel arbitration and stay the action pursuant to the Federal Arbitration Act (FAA), 9

U.S.C. § 2, *et seq*., or, in the alternative, to dismiss Singh's First Amended Complaint in part

pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the motion to

compel arbitration is granted and the case is stayed pending arbitration.

## I.    Background

### A.    Factual Background

Singh's First Amended Complaint makes many factual allegations in support of her

discrimination, sexual harassment, interference, retaliation, and aiding and abetting claims.

(ECF No. 17 ("FAC").)  In view of the narrow issue presented by the pending motion to compel

arbitration, the following summary is focused primarily on the factual allegations relevant to

Singh's sexual harassment claims.  These facts are assumed true for the purposes of this opinion. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).

MeetUp is a social media platform with its principal place of business in New York.  (*Id.* ¶ 20.)  David Siegel is MeetUp's CEO.  (*Id.* ¶ 21.)  On or about September 14, 2020, Singh began working at MeetUp as Senior Director of Product.  (*Id.* ¶ 32.)  As a condition of employment, Singh entered into a mandatory predispute arbitration agreement with MeetUp. (*Id.* ¶ 109.)  In February 2022, MeetUp promoted Singh to Vice President of Product, and in early 2023, Singh began a new role as Head of Member Growth.  (*Id.* ¶¶ 42, 55.)

Singh alleges that Siegel "subjected her to a hostile work environment on the basis of sex" throughout her employment at MeetUp.  (*Id.* ¶ 65.)  Specifically, Singh alleges that "Siegel marginalized Singh on the basis of sex by, among other things, crediting male employees with some of her accomplishments, ignoring her contributions and/or claiming them as his own, assigning projects to male employees over her, and interrupting her in meetings."  (*Id.* ¶ 67.) Siegel allegedly "exhibited a pattern of discounting Singh's contributions and favoring male employees over her," credited a male employee for Singh's recruiting and hiring accomplishments, and once presented one of Singh's ideas as his own and assigned a male employee to lead the ensuing project.  (*Id.* ¶¶ 68-69.)  He also allegedly gave preferential work assignments—and ultimately a promotion—to an equal-or-lesser-performing male Vice President.  (*Id.* ¶ 70.)  According to the First Amended Complaint, Siegel did not similarly "discount, ignore, or steal the accomplishments and contributors" of male comparators, or marginalize or mistreat them as he did Singh.  (*Id.* ¶¶ 71-72.)

In early 2023, Singh prepared to take maternity leave by meeting with Siegel and other colleagues about her upcoming leave and the status of her projects.  (*Id.* ¶ 78.)  In one of these

conversations, Singh alleges, "Siegel inappropriately questioned whether Singh's pregnancy would impact her commitment to her job," including asking if she were planning to come back to work after her leave and about the details of "her post-leave child care plans." (*Id.* ¶ 79.) Singh alleges that Siegel did not question a similarly situated male Vice President about the impact taking paternity leave would have on his work obligations. (*Id.*)

On June 9, 2023, while Singh was on maternity leave, Siegel informed Singh that she was being terminated. (*Id.* ¶¶ 5-6.) Her termination was "effective July 14, 2023, the last day of her job-protected maternity leave." (*Id.* ¶ 8.)

### B.    Procedural History

On October 4, 2023, Defendants filed an arbitration demand with the Judicial Arbitration and Mediation Service, seeking enforcement of the arbitration agreement between MeetUp and Singh.

On October 25, 2023, Singh filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging violations of Title VII.

On October 30, 2023, Singh filed this action, asserting claims under the FMLA, the NYSHRL, and the NYCHRL. (ECF No. 1.) On November 20, 2023, Defendants filed a motion to compel arbitration and stay the action or, in the alternative, to dismiss the complaint in part. (ECF No. 10.) On December 12, 2023, Singh filed an amended complaint, which included new claims under Title VII and additional factual allegations. (FAC.) On January 4, 2024, Defendants filed a second motion to compel arbitration and stay the action or, in the alternative, to dismiss the FAC in part. (ECF No. 19.) Singh filed an opposition on January 31, 2024 (ECF No. 25), and Defendants filed a reply on February 7, 2024 (ECF No. 26).

## II.    Legal Standards

This case presents the question of whether the Ending Forced Arbitration Act (EFAA)—which excludes "sexual harassment dispute[s]" from the mandatory arbitration provisions of the Federal Arbitration Act (FAA)—permits Singh to bypass arbitration.  The four other EFAA cases decided by judges in this District thus far have applied a "plausibility" standard for plaintiffs alleging conduct constituting sexual harassment.  *See Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 583-88 (S.D.N.Y. 2023); *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 551-52 (S.D.N.Y. 2023); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 180-82 (S.D.N.Y. 2023); *Baldwin v. TMPL Lexington LLC*, No. 23-CV-9899, 2024 WL 3862150, at *6 (S.D.N.Y. Aug. 19, 2024).  Such a standard makes sense at this initial stage of litigation.  As Judge Engelmayer explained, "requiring a sexual harassment claim to be capable of surviving dismissal at the threshold of a litigation" balances a healthy respect for the EFAA's purpose in "empower[ing] sexual harassment claimants to pursue their claims in a judicial, rather than arbitral, forum" while also heeding the FAA's purpose as a "liberal federal policy favoring arbitration."  *Yost*, 657 F. Supp. 3d at 586 (quoting *AT&T Mobility LLC v. Concepion*, 563 U.S. 333, 339 (2011)); *see also Delo*, 685 F. Supp. 3d at 180 (agreeing with Judge Engelmayer's approach).

Thus, "[i]n evaluating the plausibility of. . . sexual harassment claims [under the EFAA], the Court applies familiar [Rule 12(b)(6)] standards."  *Yost*, 657 F. Supp. 3d at 577.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint need not contain "detailed factual allegations," but it must offer something "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks and citation omitted). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In resolving a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Because the EFAA looks to "Federal, Tribal, or State law," the Court must also consider the liability standards of the NYCHRL and the NYSHRL, the state and local statutes on which Singh relies for her sexual harassment claims. 9 U.S.C. § 402(a). Both the NYCHRL and the NYSHRL must be construed "liberally for the accomplishment of the remedial purposes thereof." *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting N.Y. Exec. Law. § 300); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting nearly identical language from Restoration Act § 7 (amending N.Y.C. Admin. Code § 8-130)). NYCHRL provisions must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik*, 715 F.3d at 109 (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (N.Y. 2011).

**III.    Discussion**

The claims in Singh's First Amended Complaint comprise: (1) sex discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) interference in violation of the FMLA; (4) retaliation in violation of the FMLA; (5) discrimination, harassment, and hostile work environment on the basis of sex, gender, pregnancy and/or familial status in violation of the NYSHRL; (6) retaliation in violation of the NYSHRL; (7) aiding and abetting the NYSHRL

violations; (8) discrimination, harassment, and hostile work environment on the basis of sex, gender, pregnancy and/or familial status in violation of the NYCHRL; (9) retaliation in violation of the NYCHRL; and (9) aiding and abetting the NYCHRL violations.  (FAC ¶¶ 114-163.) However, only Singh's claims under the NYCHRL and the NYSHRL are at issue in the Defendant's motion to compel arbitration because it is only under these two statutes that Singh pleads "sexual harassment" as covered by the EFAA.

The arbitrability of this case turns completely on the application of the EFAA, which was enacted in March 3, 2022.  Pub. L. No. 117-90, 135 Stat. 26, *codified at* 9 U.S.C. §§ 401-02. The statute amended the FAA and provides, in part:

> [A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).  As relevant here, the EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  *Id*. § 401(4).  To invoke the EFAA, a plaintiff must plausibly plead—and not merely allege—a sexual harassment or sexual assault claim.  *See Yost*, 657 F. Supp. 3d at 585-88.

Defendants have moved to compel arbitration of Singh's claims pursuant to the arbitration agreement between MeetUp and Singh.  (ECF No. 19.)  Singh responds that because she has stated a claim for sexual harassment under the NYCHRL and NYSHRL, the EFAA permits her to bypass arbitration with respect to the entire case.  (ECF No. 25 at 1, 15-19.) Defendants counter that Singh's factual allegations do not plausibly support any sexual

harassment claims, pointing out that the EFAA does not apply to all gender discrimination claims.  (ECF No. 26 at 1-2.)

To decide the motion to compel arbitration, the Court must, therefore, determine whether Singh has plausibly "alleg[ed] conduct constituting a sexual harassment dispute."  9 U.S.C. § 402(a).  Although the original House version of the EFAA expressly defined the term "sexual harassment dispute," *see* H.R. 4445, 117th Cong. § 401(4)(A)-(E) (2021), a subsequent amendment introduced by Representative Ken Buck removed that definition, *see* H. Amdt. 171, 117th Cong. (Feb. 7, 2022).  Instead, the EFAA as enacted defers to the "applicable Federal, Tribal, or State law" to define what constitutes a "sexual harassment dispute."  9 U.S.C. § 401(4).  The House Judiciary Committee Report cited by both parties, therefore, does not help resolve the question presented, as that report pre-dates the introduction of the Buck amendment. *See* H.R. Rep. No. 117-234 (Jan. 28, 2022).  Rather, this case turns on the interpretation of the statutes under which Singh brings claims of sexual harassment: the NYCHRL and NYSHRL.

A.    **Sexual Harassment Under the NYCHRL**

The Court begins with the NYCHRL, which provides the "most lenient applicable liability standard" of the statutes on which Singh relies.[1]  *Yost*, 657 F. Supp. 3d at 578.  The NYCHRL protects New York City inhabitants from facing "prejudice, intolerance, bigotry, and discrimination, [and] bias-related violence or harassment."  N.Y.C. Admin. Code § 8-101.

The Second Circuit has held that "sexual harassment" under the NYCHRL, just like under Title VII, can be pleaded as either quid pro quo harassment or the creation of a "hostile work environment."  *Olivieri v. Stifel, Nicolaus & Co., Inc.*, --- F.4th ----, 2024 WL 3747609, at

---

[1] The Court agrees with the analysis in *Johnson*, 657 F. Supp. 3d at 552 n.14, and *Delo*, 685 F. Supp. 3d at 182 n.2, that the term "State law" in 9 U.S.C. § 401(4) encompasses the law of states' subdivisions, including the NYCHRL.

*11 (2d Cir. Aug. 12, 2024); *see also Delo*, 685 F.Supp.3d at 181-82 (citing *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998)).  Singh alleges that Siegel subjected her to a hostile work environment "by terminating her employment and treating her differently from and less favorably than similarly situated male employees and/or employees who did not become pregnant."  (FAC ¶ 150.)  Therefore, this Court must examine whether Singh was subjected to sexual harassment in the form of a hostile work environment.

In interpreting alleged discrimination under the NYCHRL, state and federal courts have yet to draw a clear line between what constitutes "sexual harassment" and what constitutes "gender discrimination."  Before the EFAA was passed, such a distinction was never at issue, because the NYCHRL, based on its clear textual meaning, protects employees against both "discrimination" *and* "sexual harassment."  *See* N.Y.C. Admin. Code § 8-101.  So long as the mistreatment could be considered either sexual harassment *or* gender-based discrimination, it would fall under the NYCHRL's protection.  *See, e.g.*, *Mihalik*, 715 F.3d at 114 (using interchangeably the terms "sexual harassment" and "gender discrimination").

However, with the passage of the EFAA, which covers only "conduct constituting a sexual harassment dispute or sexual assault dispute," 9 U.S.C. § 402(a), and defers to the "applicable Federal, Tribal, or State law" to define what constitutes a "sexual harassment dispute," 9 U.S.C. § 401(4), the difference between "sexual harassment" and the broader category of "gender discrimination" under the NYCHRL now comes to a head.

Though the NYCHRL does not explicitly define "sexual harassment," it does state in several provisions that sexual harassment is "a form of unlawful discrimination," indicating that the terms "gender discrimination" and "sexual harassment" are not coextensive under the statute. *See* N.Y.C. Admin. Code §§ 8-107(29)(b) (defining the rights and responsibilities employers

8

must display in the workplace); 8-107(30)(b)(1) (requiring employers to conduct anti-sexual harassment training and defining the term); 8-132(a)(1)(a) (requiring the commission to post online an explanation of sexual harassment).  The Eastern District of New York has come to a similar conclusion, holding that an allegation of employment discrimination was not synonymous with "sexual harassment . . . that would trigger the EFAA's provisions." *Faith v. Khosrowshahi*, No. 21-CV-6913, 2023 WL 5278126, at *7 n.5 (E.D.N.Y. Aug. 16, 2023).

Further evidence of the meaning of "sexual harassment" under the NYCHRL can be found in the agency guidance issued by the New York City Commission on Human Rights.  The NYCHRL directs the Commission to "post conspicuously on the commission's website online resources about sexual harassment," including "[a]n explanation that sexual harassment is a form of unlawful discrimination under local law" and "[s]pecific descriptions and examples of activities which may be sexual harassment."  N.Y.C. Admin. Code § 8-132(a)(1)(a)-(b).  In executing this mandate, the Commission has put up a section of its website dedicated to sexual harassment, which provides an online training module and guidance for victims.  *See Stop Sexual Harassment Act*, NYC Human Rights, https://www.nyc.gov/site/cchr/law/sexual-harassment-training-main.page (*last visited* Aug. 15, 2024).  There, the Commission defines "sexual harassment" as

> unwelcome verbal or physical behavior based on a person's gender [which] can include unwanted touching; offensive and suggestive gestures or comments; asking about a person's sex life or making sexualized remarks about a person's appearance; sexualizing the work environment with imagery or other items; or telling sexual jokes.

*Id.*  The Commission also publishes scenarios to illustrate sexual harassment, all of which include sexual flirtation, sexual jokes, or other sexual actions.  *See id.*

Further elucidation can be found in the educational posters created by the Commission, some version of which employers are required to "conspicuously display . . . in employee

breakrooms or other common areas employees gather." N.Y.C. Admin. Code § 8-107(29)(a).

On the example poster, the Commission defines sexual harassment as "a form of gender-based

discrimination [that] is unwelcome verbal or physical behavior based on a person's gender."

*Stop Sexual Harassment Act Notice*, NYC Human Rights,

https://www.nyc.gov/assets/cchr/downloads/pdf/materials/SexHarass_Notice8.5x14-English.pdf/

(*last visited* Aug. 15, 2024). The poster lists the following as "Some Examples of Sexual

Harassment":

- unwelcome or inappropriate touching of employees or customers
- threatening or engaging in adverse action after someone refuses a sexual advance
- making lewd or sexual comments about an individual's appearance, body, or style of dress
- conditioning promotions or other opportunities on sexual favors
- displaying pornographic images, cartoons, or graffiti on computers, emails, cell phones, bulletin boards, etc.
- making sexist remarks or derogatory comments based on gender

*Id.* Though a city agency's interpretation of the law is not dispositive of the meaning of the law

itself, such guidance by the body tasked with interpreting and executing the commands of the

law remains persuasive authority. *See, e.g., Wang v. James*, 40 N.Y.3d 497, 501-02 (N.Y. 2023)

("Deference is accorded to an agency's interpretation of a statute when the interpretation

involves the specialized competence or expertise the agency has developed in administering the

statute.").

And though courts have not had much opportunity to draw a clear line between

"discrimination" and "harassment," when sexual harassment claims have been litigated under the

NYCHRL, successful plaintiffs have alleged conduct or language of the same kind of romantic,

sexual, or lewd nature that the agency has described in its guidance materials. *See, e.g.*, *Nunez v.*

*New York State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647, 2015 WL 4605684, at

*11 (S.D.N.Y. July 31, 2015) (sustaining NYCHRL sexual harassment claim alleging supervisor

continually asked employee on dates, threatened to retaliate against her if she declined his requests, and told her he was "infatuated" with her), *aff'd sub nom. Nunez v. Lima*, 762 F. App'x 65 (2d Cir. 2019) (summary order); *Garcia v. New York City Health & Hosps. Corp.*, No. 15-CV-2119, 2016 WL 4097850, at *6-7 (S.D.N.Y. July 26, 2016) (sustaining NYCHRL sexual harassment claim alleging manager touched employee inappropriately multiple times by "grabbing his buttocks, 'nibbling' his ear, and kissing him on the lips"); *McHenry*, 510 F. Supp. 3d at 69-70 (sustaining NYCHRL sexual harassment claim alleging coworker threatened to send sexually explicit text messages and photos); *Mitura v. Finco Servs., Inc.*, ---F. Supp. 3d---, 2024 WL 232323, at *4 (S.D.N.Y. Jan. 22, 2024) (sustaining NYCHRL sexual harassment claim alleging HR director commented on the size of employee's breasts and speculated about whether she could still menstruate); *Kassapian v. City of New York*, 65 N.Y.S.3d 562, 565 (2017) (sustaining NYCHRL sexual harassment claim alleging that a coworker "repeatedly demonstrated a sex toy" to employee).

Considering all of this evidence of the meaning of "sexual harassment" as opposed to the broader category of "gender discrimination" under NYCHRL, the Court concludes that Singh has failed to plausibly allege that she experienced "sexual harassment" while employed at Meetup. Singh alleges that Siegel mistreated her by "crediting male employees with some of her accomplishments, ignoring her contributions and/or claiming them as his own, assigning projects to male employees over her, and interrupting her in meetings." (FAC ¶¶ 65-67.) She further alleges that Siegel "inappropriately questioned" whether Singh's pregnancy would impact her commitment to her job and whether she had plans to come back to work and had set up childcare for her return. (*Id.* ¶ 79.) Siegel allegedly did not ask a male employee in a similar role these questions when he took parental leave. (*Id.*) And finally, Singh alleges that Defendants

"harassed" her on the basis of gender "by subjecting her to false and baseless performance criticisms as a pretext for her termination during her maternity leave."  (*Id.* ¶ 100.)

These actions directed at Singh, assumed to be true at this stage of litigation, surely constitute gender discrimination under the NYCHRL.  But not all gender discrimination is sexual harassment.  And while Singh asserts that she was "subjected to a hostile work environment" and "harassed" by Siegel's mistreatment of her, such conclusory labels are not dispositive—and do not alter the facts alleged.

According to Singh, her allegation that she was treated "less well than other employees because of her gender" alone is sufficient to establish a gender discrimination claim under the "liberal[]" standards of the NYCHRL.  *Mihalik*, 715 F.3d at 109-10.  But Singh has failed to allege facts that would constitute "sexual harassment" as it has been articulated in the NYCHRL, interpreted by the New York City Commission on Human Rights, and understood by state and federal courts.  She has not adequately alleged "unwelcome verbal or physical behavior" based on her gender.  *See Stop Sexual Harassment Act Notice*.

The closest Singh gets to clearing this plausibility hurdle is her allegation that "Siegel inappropriately questioned whether Singh's pregnancy would impact her commitment to her job," when Siegel did not question a male colleague about the same impact becoming a parent would have on his commitment to his job.  (FAC ¶ 79.)  Yet this singular comment, while likely gender discrimination, does not rise to the level of the inappropriate conduct the NYCHRL targets in its attempt to protect employees against sexual harassment specifically.  *See Mihalik*, 715 F.3d at 110 ("[D]istrict courts must be mindful that the NYCHRL is not a 'general civility code.'") (quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 40 (2009)).

In *Johnson v. Everyrealm, Inc.*, one of the few EFAA sexual harassment cases decided in this District, the conduct that rose to the level of "sexual harassment" under the NYCHRL (which was exempted from mandatory arbitration by the EFAA) included the company's CEO encouraging the employee to have sex with clients, telling him she thought "he would cheat on his girlfriend if the opportunity arises," and asking him if he was late to work because he "got laid the night before."  657 F. Supp. 3d at 543-44.

In *Delo v. Paul Taylor Dance Foundation, Inc.*, another of the recent EFAA cases in this District, a female employee alleged that her boss "barged into her office" with male workers while she was pumping breast milk and then, rather than allowing the employee privacy, proceeded to approach her desk, reach over her body with both his hands "while she was still expressing milk," and use her desk phone to make a call.  685 F. Supp. 3d at 178.  The boss then had an entire phone conversation while hovering over the employee.  *Id.*  The court found that such activity, along with a pattern of comments and tirades about the employee needing to "practice[] a separation of church and state between family and work life," amounted to "sexual harassment" under the NYCHRL.  *See id.* at 177, 185.

And most recently, in *Baldwin v. TMPL Lexington LLC*, the court "easily resolved" the question of whether a plaintiff-employee had plausibly alleged sexual harassment under the NYCHRL and EFAA, holding that the employee's claim qualified as harassment because a coworker groped her, made sexual advances towards her, sent her romantic text messages, made comments about her body, and repeatedly asked her on dates.  No. 23-CV-9899, 2024 WL 3862150, at *6 (S.D.N.Y. Aug. 19, 2024).

Here, Singh, unlike the plaintiffs in *Johnson*, *Delo*, and *Baldwin*, has not alleged harassing conduct or the kind of inappropriate comments that would rise to what the courts have

determined constitutes "sexual harassment" under the NYCHRL.  Holding otherwise would collapse the difference between "gender discrimination" and "sexual harassment," a step too far for this Court absent contrary guidance from the state courts.

Singh's claims under the NYCHRL of discrimination, retaliation, and aiding and abetting caused by sexual harassment thus fail to trigger the EFAA.

### B.    Sexual Harassment under the NYSHRL

Singh further alleges that she was subjected to sexual harassment in the form of a hostile work environment in violation of the NYSHRL.  (FAC ¶ 137.)  However, for the same reasons Singh fails to plausibly allege that she suffered sexual harassment under the NYCHRL, she also fails to do so here.

Until recently, courts interpreted the NYSHRL to impose a higher standard of liability than the NYCHRL, more closely akin to Title VII.  Before 2019, plaintiffs were required to allege "severe or pervasive" conduct to adequately plead a claim of sexual harassment under the hostile work environment theory of the NYSHRL.  *See, e.g.*, *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013).  The NYSHRL was amended in 2019 to enforce "a more lenient standard of liability" closer to the NYCHRL.  *See Yost*, 657 F.Supp.3d at 578.  "The case law, however, has not definitively resolved whether the effect of the 2019 amendment is to make the NYSHRL's standard *identical* to that of the NYCHRL—or merely closer to it."  *Id.*  Yet whether the NYSHRL is either equally as permissive as the NYCHRL, *see Syeed v. Bloomberg L.P.*, No. 20-CIV-7464, 2022 WL 3447987, at *6 (S.D.N.Y. Aug. 17, 2022), or slightly more stringent, *see Wellner v. Montefiore Med. Ctr.*, No. 17-CV-3479(), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019), any claims that fail under the NYCHRL will also fail to meet the plausibility standard of the amended NYSHRL.  *See Yost*, 657 F.Supp.3d at 578; *Johnson*, 657 F.Supp.3d at 552.

Because Singh's allegations of sexual harassment in her workplace do not meet the plausibility threshold of the NYCHRL, they also fail under the NYSHRL.  Thus, the EFAA is not triggered by Singh's NYSHRL claims.

### C.    Enforcement of the Arbitration Agreement

Singh does not contest the validity of the arbitration agreement she signed as a condition of working at Meetup, but rather asserts that her claims should be litigated outside of arbitration because her sexual harassment claims fall under the EFAA's protections.  (*See* FAC ¶¶ 108-11.) Because none of Singh's claims fall under the EFAA's protections, her claims are subject to mandatory arbitration pursuant to the terms of the arbitration agreement.

Defendants request that the Court dismiss Plaintiff's discrimination claims in their entirety, with prejudice.  (ECF No. 26 at 10.)  The FAA directs a district court to enter a stay of proceedings in cases where the claims are "referable to arbitration."  9 U.S.C. § 3.  This past term, the Supreme Court confirmed the Second Circuit's understanding that a court may not dismiss a case, and instead must issue a stay, "when the dispute is subject to arbitration and a party requests a stay pending arbitration."  *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).  Moreover, "a mandatory stay is consistent with the FAA's underlying policy 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'"  *Katz*, 794 F.3d at 346 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)); *see also Hamzaraj v. ABM Janitorial Ne. Inc.*, No. 15-CV-2030, 2016 WL 3571387, at *5 (S.D.N.Y. June 27, 2016) (collecting cases).  Though Singh has not explicitly requested a stay, in opposing Defendants' motion to dismiss, she has asked the Court not to dismiss her claims outright.  The Court therefore denies Defendants' motion to dismiss and will enter a stay of this case pending arbitration of Singh's claims.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion to compel arbitration and stay the case is GRANTED, and Defendants' motion to dismiss the complaint in part is DENIED without prejudice to renewal in the event the stay is lifted.  The case is hereby stayed pending arbitration.

The Clerk of Court is directed to close the motions at ECF Numbers 10 and 19 and to mark this case as stayed.

SO ORDERED.

Dated:  August 22, 2024
          New York, New York

_____
          J. PAUL OETKEN
        United States District Judge

16